```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
 UNITED STATES OF AMERICA, et al., ex     :
 rel. Fox Rx, Inc.,                       :            12cv275 (DLC)
                      Plaintiff,          :
                                          :            OPINION & ORDER
        -v-                               :
                                          :
 OMNICARE, INC., NEIGHBORCARE, INC.,      :
 PHARMERICA CORP., and MANAGED HEALTH     :
 CARE ASSOC., INC.,                       :
                      Defendants.         :
                                          :
-----------------------------------------X
```

APPEARANCES:

For relator Fox Rx, Inc.:

Michael I. Leonard
LEONARD LAW OFFICES
203 N. LaSalle, Suite 1620
Chicago, IL 60601

Paul A. Traina
ENGSTROM, LIPSCOMB & LACK, PC
10100 Santa Monica Blvd., 12th Fl.
Los Angeles, CA 90067

Dennis J. Doody
120 White Plains Rd., Ste. 125
Tarrytown, NY 10591

For defendant Managed Health Care Associates Long Term Care
Network Inc.:

Daniel S. Ruzumna
Adam Blumenkrantz
PATTERSON BELKNAP WEBB & TYLER LLP
113 Ave. of the Americas
New York, NY 10036

DENISE COTE, District Judge:

Fox Rx, Inc. ("Fox"), a serial qui tam relator and former Medicare Part D plan sponsor, has brought at least a half-dozen actions under the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"), around the country against entities with which it once worked, among others.  This is one such action, which was dismissed on August 12, 2014.  See United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., --- F. Supp. 2d ---, 2014 WL 3928780 (S.D.N.Y. Aug. 12, 2014) (the "August 12 Opinion").  Five others have been dismissed as well.  Defendant MHA Long Term Care Network ("MHA LTC") now moves for an award of attorneys' fees and costs pursuant to 31 U.S.C. § 3730, which authorizes such an award in certain FCA actions where "the court finds that the claim . . . was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."  For the reasons stated below, the Court finds MHA LTC is entitled to fees and costs incurred since January 10, 2014.

## BACKGROUND

### I.  Fox's Claims

Fox filed this action on January 12, 2012 on behalf of the United States, the District of Columbia and twenty-one states. Fox's Second Amended Complaint ("SAC"), filed on February 10, 2014, contained twenty-five counts.  In broad strokes, the SAC asserted that the defendants had engaged in two illegal

practices: (1) defendants failed to substitute generic drugs for brand-name drugs in states that have laws mandating such substitution, and (2) defendants dispensed drugs after the termination date of a national drug code in states that have laws prohibiting pharmacies from dispensing drugs beyond their shelf-life expiration dates.  Fox asserted that, by engaging in such practices, defendants falsely indicated in "submissions" to a federal agency that the drugs they dispensed were "covered" by Medicare, and overcharged Medicare and Medicaid.

## II.  The ProCare Provider Agreement

MHA LTC contracts with independent long-term care pharmacies to, inter alia, negotiate reimbursement rates on their behalf and manage Medicare Part D claims.  MHA LTC enters into agreements with Pharmacy Benefits Managers ("PBMs") on behalf of the pharmacies in its network (the "Network Pharmacies") that allow the PBMs to provide claims adjudication services when claims are submitted to Medicare and Medicaid for payment.  MHA LTC is not itself a pharmacy, does not itself dispense drugs, and exercises no control or supervision of the Network Pharmacies' dispensing.

One such agreement, executed by MHA LTC and ProCare PBM ("ProCare") (the "ProCare Provider Agreement"), was attached as an exhibit to the SAC.  In that document MHA LTC agreed, on behalf of the Network Pharmacies, that the "Pharmacy Provider"

had certain obligations.  A "Pharmacy Provider" was defined in

that agreement as the "dispenser of drug products and/or

services, acting either as, but not limited to, a single

(independent) or multiple (chain) entity that has entered into

this Agreement with ProCare PBM."  The Procare Agreement also

defined a "Drug Product or Service" as "[a]ny drug medication or

consultation service (required to be given in connection with a

drug medication) rendered to a Covered Person by Pharmacy

Provider."

         The ProCare Agreement sets out certain obligations of

Pharmacy Providers, including

> [the] <u>obligation to</u> ensure that any pharmacist
> who is performing on behalf of the Pharmacy
> Provider shall use his or her professional
> judgment when filling prescript orders, and will
> <u>comply with all legal</u>, professional and ethical
> <u>obligations applicable to pharmacists</u> under the
> laws of the jurisdiction in which the
> prescription service is received.

(Emphasis added.)  In addition, the "Pharmacy Provider agrees to

inform [prescription drug plan] Part D enrollees at the point of

sale of any differential between the price of the lowest-priced

therapeutically equivalent and bio-equivalent generic drug

unless the lowest price drug is being purchased in accordance

with 42 CFR § 423.132(a)."

         In support of its motion to dismiss, MHA LTC submitted an

agreement MHA LTC signed on its own behalf with ProCare setting

forth MHA LTC's own obligations (the "MHA LTC-ProCare

Agreement").  That agreement imposes no compliance or oversight

obligations on MHA LTC with respect to the Network Pharmacies.

### III. August 12 Opinion's Holding Concerning MHA LTC[1]

Fox recognized that MHA LTC signed the ProCare Provider

Agreement on behalf of the Network Pharmacies, but argued that,

by signing, MHA LTC had undertaken to supervise and ensure

compliance with the ProCare Provider Agreement -- and through a

promise to comply with all applicable laws, compliance with all

such laws -- on behalf of the Network Pharmacies.  Fox pointed

to no provision of the ProCare Provider Agreement, any other

agreement, or any authority that would render MHA LTC

responsible for the Network Pharmacies' compliance.  Fox argued

that the commitments recited in the ProCare Provider Agreement

were made by MHA LTC as opposed to the Pharmacy Provider.  The

August 12 Opinion explained as follows:

> The claims against MHA merit additional
> discussion.  As described in the SAC, MHA is not a
> pharmacy.  It does not fill prescriptions or make
> judgments about how they should be filled.  It
> provides services that connect independent pharmacies
> providing [long-term care facility] services with
> PBMs.  It receives a payment for each reimbursed
> prescription, but is not involved in submitting any
> claims for reimbursement.
> The SAC attempts to plead a claim against MHA
> premised on MHA's purported failure to abide by its
> contractual obligation to oversee its network of
> pharmacies and to ensure that those pharmacies comply

---

[1] In the August 12 Opinion, MHA LTC is referred to as "MHA."

with the law.  But, in doing so the SAC misdescribes the terms in a form contract that MHA executed with a PBM named ProCare PBM.  An examination of the ProCare PBM agreement, which is attached as an exhibit to the SAC, shows that the commitments described within the agreement that are pertinent to Fox's claim are duties imposed on pharmacies and not duties assumed by MHA. . . .

Fox argues in opposition to this motion that it is premature to dismiss its claims against MHA since MHA has raised nothing more than a factual dispute over the terms of the ProCare PBM agreement, and specifically whether that agreement may be read to define MHA as a "pharmacy provider."  Fox points to the prologue to the agreement, which explains that it is an agreement made between ProCare PBM and the undersigned [long-term care] "Pharmacy Provider."  The signatory is MHA.  Fox argues that by signing the agreement, MHA "expressly assumed certain compliance obligations of its network pharmacies and then failed in those obligations."  It argues that this constitutes more than a "simple agency relationship."

Fox cannot avoid the plain and unambiguous meaning of the agreement by pointing to MHA's signature on the agreement.  The agreement has a definition of "Pharmacy Provider" that excludes MHA.  It is undisputed, and acknowledged in the SAC, that MHA is not a pharmacy and does not dispense medication.  The agreement defines the "Pharmacy Provider" as the entity that dispenses drugs.  MHA's signature on behalf of its network of pharmacies does not convert MHA into a dispenser of drugs.  All of the obligations in the agreement to which Fox points apply solely to the entities that dispense drugs.

Because MHA is not a pharmacy and did not dispense medication it is not surprising that Fox has also failed to allege the fraud claims against MHA with particularity.  The SAC does not allege with particularity any act by MHA that resulted in a branded drug being dispensed instead of a generic, in a pharmacist dispensing a medication beyond its expiration date or even its [national drug code] termination date, or in the submission of any inaccurate information.  There is also no allegation from which MHA's fraudulent intent may be inferred.  For each of these reasons as well, the claims against MHA must be dismissed.

August 12 Opinion, 2014 WL 3928780, at *13.

## IV.  MHA's Meeting With Fox

Fox's initial and first amended complaints were brought against MHA LTC's parent ("MHA") rather than MHA LTC and made a number of erroneous factual allegations concerning MHA's business, including a number of allegations concerning its purported dispensing practices -- despite the fact that MHA and MHA LTC are not pharmacies and do not dispense drugs.  Counsel for the MHA entities arranged an in-person meeting with Fox's principal and its counsel on January 10, 2014.  At that meeting, counsel for MHA presented a detailed PowerPoint presentation (the "MHA Presentation") concerning the business of both entities, which MHA LTC has submitted in support of the instant motion.  In particular, the MHA Presentation included the following bullet points:

- MHA LTC has no involvement whatsoever in pharmacies' decisions regarding dispensing of drugs or the submissions of claims;

- MHA LTC receives the <u>same</u> fee whether a branded or generic drug is dispensed;

- MHA LTC has no role in the submission of claims by a pharmacy to a PBM;

- MHA LTC has no role in the payment of a claim by the [Part D sponsor];

- MHA LTC has no role in the submission of [claim data for reimbursement from Medicare Part D];

- Neither MHA nor MHA LTC is a long-term care pharmacy; they provide none of the services that a pharmacy provides; [and]

7

- • Claims against MHA are legally baseless; MHA has no legal responsibility for claims submitted on drugs dispensed by pharmacies.

The MHA Presentation also cited to key provisions in the relevant agreements between MHA LTC and long-term care pharmacies and between MHA LTC and PBMs like ProCare, including the MHA LTC-ProCare Agreement.  Counsel for MHA provided Fox with copies of those agreements, the MHA Presentation, and a motion for sanctions under Rule 11, Fed. R. Civ. Pro., that MHA planned to file if Fox's allegations against MHA were not withdrawn.

On February 10, Fox filed the SAC, substituting MHA LTC for MHA and revising its allegations to reflect that MHA LTC did not dispense drugs.  As noted in the August 12 Opinion, "the SAC does not allege with particularity any act by MHA that resulted in a branded drug being dispensed instead of a generic, in a pharmacist dispensing a medication beyond its expiration date or even its NDC termination date, or in the submission of any inaccurate information."  August 12 Opinion, 2014 WL 3928780, at *13.  The SAC was dismissed in its entirety on August 12.

## V.   MHA LTC's Motion for Fees

On August 26, 2014, MHA LTC filed the instant motion for attorneys' fees and costs incurred since January 10, 2014.  MHA LTC "estimates the value of services and related expenses . . . to be approximately $140,000."  MHA LTC has not submitted

contemporaneous time records or other evidence substantiating

the requested fees and costs.

## DISCUSSION

The "American Rule" ordinarily requires each party to bear

its own litigation costs.  Castillo Grand, LLC v. Sheraton

Operating Corp., 719 F.3d 120, 123 (2d Cir. 2013) (quoting

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240,

245 (1975)).  Congress may displace this rule by statute, id.,

as it has done for certain civil actions for false claims.  Per

31 U.S.C. § 3730(d)(4),

> If the Government does not proceed with the action and
> the person bringing the action conducts the action,
> the court may award to the defendant its reasonable
> attorneys' fees and expenses if the defendant prevails
> in the action and the court finds that the claim of
> the person bringing the action was clearly frivolous,
> clearly vexatious, or brought primarily for purposes
> of harassment.

A court may award fees pursuant to § 3730 "upon a

finding that the . . . claims were objectively frivolous,

irrespective of plaintiff's subjective intent."  Mikes v.

Straus, 274 F.3d 687, 705 (2d Cir. 2001).  "A claim is

frivolous when, viewed objectively, it may be said to have

no reasonable chance of success, and present no valid

argument to modify present law."  Id.

The Second Circuit has affirmed an award of fees where

the defendant had no financial incentive to engage in the

alleged misconduct and plaintiff cited no evidence that
that misconduct occurred.  Id.  Applying a similar
standard, the Second Circuit has affirmed where the
defendant "had nothing to do with the alleged [misconduct]
underlying Plaintiffs' complaint."  Carter v. Inc. Vill. of
Ocean Beach, 759 F.3d 159, 166 (2d Cir. 2014) (Section 1988
case); see Mikes, 274 F.3d at 705 ("The Act's legislative
history suggests that the standard of § 3730(d)(4) is
analogous to that used for claims for attorneys' fees
brought under 42 U.S.C. § 1988.")

Fox's claims against MHA LTC here were "clearly
frivolous."  As Fox well knew, MHA LTC had nothing to do
with the dispensing of drugs, and thus had nothing to do
with the two drug dispensing schemes alleged by Fox.  Nor
did it have any financial incentive to engage in these
schemes, as it received a flat fee unrelated to whether the
dispensed drug was generic or branded or to the drug's
national drug code termination date.  Instead of dropping
MHA from this action following the January 10, 2014
meeting, Fox concocted a theory of liability against MHA
LTC based wholly on an obvious misreading of the ProCare
Provider Agreement.  Fox had no reasonable basis to assert
that MHA LTC had undertaken the responsibility of
supervising its Network Pharmacies' compliance with all

applicable laws.  Viewed objectively, Fox's claims against

MHA LTC had no reasonable chance of success, and Fox

presented no valid argument to modify the governing law.

See Mikes, 274 F.3d at 705.  Accordingly, MHA LTC's motion

for fees and costs since January 10, 2014 is granted in an

amount to be determined following the submission of

supporting documentation by MHA LTC.  The schedule for such

submissions is set out in an accompanying Order.

    In its opposition to the present motion, Fox

reiterates its argument concerning its misreading of the

ProCare Provider Agreement, which was rejected in the

August 12 Opinion that found the ProCare Provider Agreement

unambiguous on this point.  Fox also points to certain

evidence that Fox suggests indicates that MHA LTC is a

pharmacy -- for example, the fact that, in Appendix C to

the ProCare Provider Agreement, where MHA LTC provided

"Credentialing Information," MHA LTC "checked a box as its

'Pharmacy Type' being 'LTC' [long-term care], despite its

claim of not [being a] 'pharmacy' or similar."  There can

be no serious dispute that MHA LTC is not a pharmacy.

Indeed, Fox revised its pleadings to remove its allegation

that MHA was a pharmacy, and the SAC does not allege MHA

LTC is a pharmacy.

11

Second, Fox points to MHA LTC's supposed "inability to ever explain why it inserted itself into the ProCare Agreement" and "into the compliance process."  Fox fails to recognize -- as the ProCare Provider Agreement expressly states -- that MHA LTC was acting as an agent for its Network Pharmacies and signing on their behalf.

Third, Fox complains that, since January 10, MHA LTC has "run up enormous legal fees towards the now apparent ultimate goal of a 'gotcha.'"  This argument is disingenuous, to say the least, given that MHA and MHA LTC invited Fox to the MHA Presentation in order to convince Fox to drop its claims against the MHA entities.  In any event, this argument relates to the amount of fees to be awarded and does not suggest that MHA should be denied an award of a reasonable amount of fees.

Finally, Fox argues that it "presented matters of first impression in this Circuit," referring to regulations that obligated Part D sponsors and downstream entities to "comply with all applicable Federal laws [and] regulations."  42 C.F.R. § 423.505(i)(3)(iv).  It is true that the Second Circuit has not yet considered whether these regulations impose "conditions of participation" in a federal health care program or "prerequisites to receiving reimbursement."  Mikes, 274 F.3d at 701-02.  This does not

alter the fact that Fox alleged no misconduct by MHA LTC,

and its proposed basis for MHA LTC's liability for the

conduct of the Network Pharmacies was objectively

frivolous.

## CONCLUSION

MHA LTC's August 26, 2014 motion for attorneys' fees and

costs is granted in an amount to be determined.


SO ORDERED:

Dated:     New York, New York
           December 1, 2014

                              _____
                                       DENISE COTE
                              United States District Judge